Robert L. SCHULZ, Plaintiff,

v.

UNITED STATES, Defendant.

1:15–cv–01299 (BKS–CFH)

United States District Court,
N.D. New York.

Signed 03/07/2017

Decision denying reconsideration
April 14, 2017

308

Plaintiff Pro Se, Robert L. Schulz, Queensbury, NY 12804

For Defendant United States: Gregory S. Seador, U.S. Department of Justice— Tax Division, Ben Franklin Station, P.O. Box 7238, Washington, DC 20044

## MEMORANDUM—DECISION AND ORDER

Hon. Brenda K. Sannes, United States District Court Judge:

### I. INTRODUCTION

Plaintiff pro se Robert L. Schulz brings this action against Defendant United States ("the Government"), under 26 U.S.C. § 6703(c)(2), alleging that he received an erroneous tax assessment penalty from the Internal Revenue Service ("IRS") in the amount of $225,000 related to his promotion of an abusive tax shelter, and that the IRS wrongfully filed a notice of federal tax lien against his property for the $224,000 unpaid balance of the assessment. (Dkt. No. 8). Several motions are currently pending before the Court: 1) Schulz's motion for an Order to Show Cause requesting partial removal of the federal tax lien, which the Court construes as a motion for a preliminary injunction (Dkt. No. 36); 2) the Government's motion for partial summary judgment (Dkt. No. 38); 3) Schulz's motion for summary judgment; (Dkt. No. 39); and 4) Schulz's motion to "re-litigate" a decision in a related case (detailed below). (Dkt. No. 41).

### II. PROCEDURAL HISTORY

In 2007, the Government brought a civil action against Schulz seeking to enjoin him (and two corporate defendants he founded) from promoting an abusive tax shelter pursuant to § 6700 of the Internal Revenue Code, 26 U.S.C. § 6700. *United States v. Schulz*, 529 F.Supp.2d 341 (N.D.N.Y. 2007) *aff'd*, 517 F.3d 606 (2d Cir. 2008) and *enforcement granted*, No. 1:07-CV-0352, 2008 WL 2626567, 2008 U.S. Dist. LEXIS 57948 (N.D.N.Y. Apr. 28, 2008) ("*Schulz I*"). The action related to Schulz's distribution of a "Tax Termination Package" (also known as

the "Blue Folder") in 2003 to help individuals to stop withholding, paying, and filing federal taxes. *Id.* United States District Judge Thomas J. McAvoy found that Schulz was promoting an abusive tax shelter, and enjoined him from further doing so. *Id.*

On March 9, 2015, Schulz received a tax assessment penalty from the IRS in the amount of $225,000 for promoting the abusive tax shelter at issue in *Schulz I.* (Dkt. No. 13–1, p. 6). Pursuant to § 6700, the IRS calculated the penalty by multiplying the number of Tax Termination Packages that Schulz mailed to individuals in 2003 by $1,000.[1] (Dkt. No. 15–2, ¶¶ 3–5). On April 6, 2015, Schulz appealed the penalty to the IRS, arguing that he was not subject to any statutory penalty under § 6700(a)(2)(B) because he did not receive any income from the alleged tax shelter. (Dkt. No. 13–1, ¶¶ 8–9). Schulz also paid $1,000 towards the penalty as part of the appeal and requested a refund. (*Id.*, ¶ 8). On November 2, 2015, "having received no word from the IRS regarding its resolution" of his appeal and refund, Schulz commenced this action to determine his tax penalty liability pursuant to § 6703(c)(2). (*Id.*, ¶ 12). On November 24, 2015, the IRS filed a notice of federal tax lien against Schulz's property for the $224,000 unpaid balance of the penalty (Dkt. No. 13–1, pp. 24–27), which Schulz objected to in the Amended Complaint he filed on January 4, 2016. (Dkt. No. 8).

In January 2016, Schulz moved for a preliminary injunction to prohibit the Government "from engaging in any lien or levy collection activity" against him and to remove the notice of federal tax lien. (Dkt. Nos. 9, 13). In a Memorandum–Decision & Order dated February 11, 2016, the Court

denied Schulz's request for a preliminary injunction on the grounds that it was barred as a matter of law by the Anti–Injunction Act, 26 U.S.C. § 7421. (Dkt. No. 23).

Meanwhile, the Government filed a partial motion to dismiss the Amended Complaint (Dkt. No. 11), which Schulz opposed. (Dkt. No. 16). Schulz also cross-moved for summary judgment on his claim related to the tax penalty assessment. (*Id.*). On April 12, 2016, Schulz filed an Order to Show Cause, again seeking the removal of the federal tax lien, and also to expedite determination of his cross-motion for summary judgment. (Dkt. No. 24).

In a Memorandum–Decision & Order dated May 6, 2016, the Court granted the Government's partial motion to dismiss, and denied Schulz's cross-motion for summary judgment and Order to Show Cause. (Dkt. No. 25). The Court denied Schulz's cross-motion for summary judgment as premature, "without prejudice to renew at the close of discovery." (*Id.*, p. 13). The Court denied Schulz's Order to Show Cause, referring back to the same reasons stated in the Court's previous Memorandum–Decision & Order dated February 11, 2016. (*Id.*, p. 14).

On May 20, 2016, the Government answered the Amended Complaint and asserted a counterclaim against Schulz, seeking "to reduce to judgment penalties assessed under 26 U.S.C. § 6700 against Schulz for his participation in the organization, promotion and sale of the so-called 'Tax Termination Package' in 2003, which falsely and fraudulently claimed to enable participants who followed its instructions to stop paying federal employment and income taxes." (Dkt. No. 29, p. 11). The

---

1. Under § 6700, any person who promotes an abusive tax shelter "shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity." 26 U.S.C. § 6700(a).

Government asserted that "Schulz is collaterally estopped from re-litigating the *Schulz I* court's decision ... and is legally bound by the ruling that he engaged in penalty conduct by virtue of his distribution of the Tax Termination Package," and that "Schulz is liable to the United States for the unpaid balance of the assessment described in ... this counterclaim, in the amount of $224,000 plus interest." (*Id.*, p. 17).

On July 6, 2016, Schulz filed his pending motion for a preliminary injunction (Dkt. No. 36), which the Government opposed. (Dkt. No. 37). On July 22, 2016, the Government filed the pending motion for partial summary judgment (Dkt. No. 38), which Schulz opposed. (Dkt. No. 50). On July 22, 2016, Schulz filed his own motion for summary judgment (Dkt. No. 39), which the Government opposed. (Dkt. No. 47). Finally, on July 25, 2016, Schulz filed his motion to re-litigate (Dkt. No. 41), which the Government opposed. (Dkt. No. 48).

## III. FACTUAL BACKGROUND

The Court assumes familiarity with the factual background in this case, as set forth in *Schulz I*, as well as the Court's previous decisions dated February 11, 2016 and May 6, 2016. (Dkt. Nos. 23, 25).

## IV. SCHULZ'S MOTION FOR A PRELIMINARY INJUNCTION

Schulz seeks an "an order for *partial* removal of the Federal Tax Lien—that is, that part covering two vacant parcels of his real property representing a small fraction of the assessed value of Schulz's overall land holdings." (Dkt. No. 36–5, p. 7). Schulz argues that "[r]emoval of the two parcels from the Lien will provide Schulz with the opportunity to sell those parcels and thus put an end to the ongoing, *irreparable* injury he is experiencing due to the loss of his Sixth Amendment Right to counsel." (*Id.*). Schulz further contends that "removal of the two parcels from the Lien will not adversely affect the Government's security interest in Schulz's property. The value of the remaining seven parcels is 3.2 times that needed to enable Schulz to satisfy the full tax assessment penalty pending a final determination." (*Id.*).

In response, the Government argues that Schulz's motion "is time-barred because it is an untimely motion for reconsideration," and moreover, "the relief that Schulz seeks is barred by the Anti–Injunction Act." (Dkt. No. 37, pp. 7–8). The Court agrees on both counts. Schulz previously sought removal of the federal tax lien in two separate motions (Dkt. Nos. 9, 13, 24), which the Court denied. (Dkt. Nos. 23, 25). Although Schulz now only seeks *partial* removal of the federal tax lien, the motion essentially constitutes one for reconsideration of the Court's previous judgments, and is untimely under Local Rule 7.1(g). *See* N.D.N.Y. L.R. 7.1(g) (requiring motions for reconsideration to be filed no later than fourteen days after entry of the challenged judgment).

Moreover, Schulz's motion fails on the merits, for the same reasons explained in the Court's previous decisions. Specifically, Schulz's motion is barred as a matter of law by the Anti–Injunction Act, which states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Although there are certain exceptions to this general rule, the Court previously found that they do not apply here. (Dkt. No. 23, pp. 4–8). Schulz argues that partial removal of the federal tax lien would allow the Government to retain a security interest in his property to potentially satisfy the tax assessment. (Dkt. No. 36–5, p. 7). However,

Schulz does not point to any authority for an exception to the rule against *any* restraint on the assessment or collection of taxes, permitting partial removal of the federal tax lien, and the Court is aware of none.

█ Schulz also argues that the judicially created exception to the Anti–Injunction Act applies in this case because "equity jurisdiction exists" and "under no circumstances can the Government ultimately prevail." (Dkt. No. 36–5, pp. 8–15). The Court has already squarely rejected this argument and will not belabor it again here. (Dkt. No. 23, pp. 5–8). The Court will only add that, to the extent Schulz contends that imposition of the federal tax lien violates his Sixth Amendment right to counsel and thereby causes him irreparable harm (since he cannot liquidate the property in order to pay for an attorney) (Dkt. No. 36–5, pp. 8–10), "it is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013).[2]

Accordingly, Schulz's motion for a preliminary injunction must be denied, for the same reasons stated in the Court's previous decisions. (Dkt. No. 23, 25).

## V. THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT & SCHULZ'S MOTION TO RE–LITIGATE

█ The Government's motion for partial summary judgment and Schulz's motion to relitigate both center on what effect, if any, the decision in *Schulz I* should have on this case. The Government argues that it is entitled to partial summary judgment because "the doctrine of collateral estoppel bars the relitigation here of Schulz's liability under § 6700," which was previously established in *Schulz I*. (Dkt. No. 38–1, p. 3). In response, Schulz argues that "the doctrine of collateral estoppel is no bar to re-litigation of *Schulz I*." (Dkt. No. 50–3, pp. 5–11). In his motion to relitigate, Schulz explicitly asks for a complete do-over of *Schulz I*. (Dkt. No. 41). The gist of Schulz's argument for purposes of both motions is that he did not get a full and fair opportunity to litigate the issues in *Schulz I*. Thus, the Court must decide whether collateral estoppel applies here.

█ "Issue preclusion, or collateral estoppel, which applies not to claims or to causes of action as a whole but rather to issues, bars litigation of an issue when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion," whereas "the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996).

The Government argues that "the issue of Schulz's liability under § 6700 was the identical issue raised in *Schulz I*." (Dkt. No. 38–1, p. 7). In that case, Judge McAvoy addressed the issues of: 1) whether Schulz engaged in conduct subject to pen-

---

**2.** Although Plaintiff cites the recent Supreme Court decision in *Luis v. United States*,, —— U.S. ——, 136 S.Ct. 1083, 1099, 194 L.Ed.2d 256 (2016), that case involved a criminal defendant's right to counsel, and thus is inapposite.

alty under § 6700; and 2) whether injunctive relief was appropriate to prevent recurrence of such conduct. *Schulz*, 529 F.Supp.2d at 346. The first issue is also a predicate part of this case, since Schulz now challenges the imposition of the penalty, which the Government seeks to collect. (Dkt. Nos. 8, 29). Schulz argues, however, that the conduct at issue in *Schulz I* "was not then and never has been *conduct subject to penalty under Section 6700* because Section 6700 exempts conduct from penalty where the record shows 100 percent of the income derived (or to be derived) from 'the conduct' amounts to zero ($0.00), and where the record shows the Blue Folder has not and was never intended to be sold, and was always intended to be distributed free of charge, and neither Schulz nor WTP [3] derived any income from the Conduct." (Dkt. No. 50–3, p. 6). But this argument goes to the separate issue of whether (and how much) Schulz profited from the abusive tax shelter. *Schulz I* did not reach that issue, since the Government sought only to enjoin Schulz's conduct. Judge McAvoy found that Schulz's conduct violated § 6700, and this same threshold issue must be decided in this case before a penalty can be imposed.

Next, the Government argues that the issue of Schulz's liability under § 6700 was actually litigated and decided in *Schulz I*. (Dkt. No. 38–1, p. 8). Schulz disputes this argument, (Dkt. No. 50–3, p. 5), but in finding a violation of § 6700, Judge McAvoy addressed all the elements of the statute and cited supporting evidence. *Schulz*, 529 F.Supp.2d at 346–52. The Government also argues that "resolution of Schulz's conduct under § 6700 was necessary to support a final judgment on the merits in *Schulz I*." (Dkt. No. 38–1, p. 9). As stated above, Judge McAvoy's finding that Schulz

violated § 6700 was the underlying basis for the injunction to enjoin such conduct. Thus, resolution of the issue of Schulz's liability was necessary to support the injunction under § 7408.

Schulz mainly argues that *Schulz I* was not fully and fairly litigated, because the "Court hastily granted the United States' motion for summary judgment under 26 U.S.C. Section 7408 without determining if Schulz's conduct was liable for penalty under Section 6700." (Dkt. No. 50–3, p. 3). Schulz complains that Judge McAvoy held no hearing "on any of the dozens of material facts that were in genuine dispute." (*Id.*, p. 10). As the party opposing issue preclusion, Schulz bears the burden of showing "that the prior action did not afford a full and fair opportunity to litigate the issues." *Kulak*, 88 F.3d at 72. He has not met that burden here. Rather, the record shows that after Schulz "submitted numerous materials outside of the pleadings in support of [his] motion to dismiss" in *Schulz I*, the United States cross-moved for summary judgment, and Schulz "had an opportunity to reply to the cross-motion." *Schulz*, 529 F.Supp.2d at 357 n.12. In finding that Schulz violated § 6700, Judge McAvoy cited evidence including Schulz's declaration, responsive statement of facts, and numerous exhibits. The court decided the motion based on the undisputed evidence—no evidentiary hearing was required. Thereafter, Schulz appealed the decision to the Second Circuit, arguing, *inter alia*, that his "actions were not violative of 26 U.S.C. §§ 6700 or 6701." *United States v. Schulz*, 517 F.3d 606, 607 (2d Cir. 2008). The Circuit affirmed, finding Schulz's arguments to be "without merit." *Id.* Schulz even appealed to the United States Supreme Court, but his petition for

**3.** WTP refers to the two corporate entities founded by Schulz, which were also sued in *Schulz I* and enjoined from promoting an abusive tax shelter. *See Schulz*, 529 F.Supp.2d at 345.

a writ of certiorari was denied. *Schulz v. United States*, 555 U.S. 946, 129 S.Ct. 435, 172 L.Ed.2d 290 (2008).

In sum, the record shows that Schulz received a full and fair opportunity in *Schulz I* to litigate the issue of his liability under § 6700. Thus, Judge McAvoy's determination that Schulz violated § 6700 by promoting an abusive tax shelter is entitled to preclusive effect in this case. As a result, the Government is entitled to summary judgment on the issue of Schulz's liability under § 6700, leaving only the issue of the penalty due (which Schulz may challenge on the basis that he received no income from the abusive tax shelter). *See Gardner v. C.I.R.*, 145 T.C. 161, 177 (Tax 2015) (applying collateral estoppel as to plaintiffs' liability for § 6700 penalties based on earlier injunction against abusive tax shelter, where "the District Court necessarily determined that they engaged in conduct subject to the section 6700 penalty"). For the same reasons, Schulz's motion to re-litigate *Schulz I* must be denied.

## VI. SCHULZ'S MOTION FOR SUMMARY JUDGMENT

Schulz seeks summary judgment on his claim challenging the tax penalty assessment, arguing that the undisputed evidence shows that he received no income from the abusive tax shelter, and therefore, the penalty should be zero. (Dkt. No. 39–2). In response, the Government argues that Schulz's "second motion for summary judgment should be denied because it defies the Court's prior order and because it is premature under Rule 56(d)." (Dkt. No. 47, p. 7). Schulz previously filed an almost identical motion for summary judgment, (Dkt. No. 16), which the Court denied as premature, "without prejudice to renew *at the close of discovery*." (Dkt. No. 25, p. 13) (emphasis added). Discovery is still ongoing in this matter. (*See* Dkt. Nos. 86, 87). Accordingly, Schulz's motion is still premature, and must be denied once more, for

the reasons explained in the Court's May 6, 2016 decision. Once again, Schulz is reminded that should he renew his motion, *after discovery is complete*, he must comply with Local Rule 7.1(a)(3).

## VII. CONCLUSION

It is therefore

**ORDERED** that Schulz's motion for an Order to Show Cause (Dkt. No. 36) is **DENIED**; and it is further

**ORDERED** that the Government's motion for partial summary judgment (Dkt. No. 38) is **GRANTED**; and it is further

**ORDERED** that Judge McAvoy's determination in *Schulz I* that Schulz violated § 6700 by promoting an abusive tax shelter is entitled to preclusive effect in this case; and it is further

**ORDERED** that Schulz's motion for summary judgment (Dkt. No. 39) is **DENIED**; and it is further

**ORDERED** that Schulz's motion to re-litigate (Dkt. No. 41) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

## DECISION AND ORDER ON RECONSIDERATION

Presently before the Court is a motion from Plaintiff pro se Robert Schulz (Dkt. No. 92) seeking reconsideration of the Court's March 7, 2017 Memorandum–Decision & Order (Dkt. No. 88), which denied Schulz's motion for an Order to Show Cause, granted the Government's motion for partial summary judgment, denied Schulz's motion for summary judgment, and denied Schulz's motion to re-litigate. (*See* Dkt. Nos. 36, 38, 39, 41).

In general, a motion for reconsideration may only be granted upon one of three grounds: "(1) an intervening change in law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice." *Shannon v. Verizon N.Y., Inc.*, 519 F.Supp.2d 304, 307 (N.D.N.Y. 2007); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (same) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The standard for reconsideration is strict and is committed to the discretion of the court." *S.E.C. v. Wojeski*, 752 F.Supp.2d 220, 223 (N.D.N.Y. 2010) *aff'd sub nom. Smith v. S.E.C.*, 432 Fed.Appx. 10 (2d Cir. 2011).

Here, Schulz "seeks only to prevent clear error of law and prevent manifest injustice." (Dkt. No. 92–1, p. 5). Specifically, Schulz argues that: 1) the First Amendment Petition Clause issue was not fully and fairly litigated in *Schulz I*; 2) the parties' material facts in genuine dispute were not fully and fairly litigated in *Schulz I*; and 3) the Anti–Injunction Act is inapplicable. (*Id.*, pp. 6–27). *Schulz I* refers to a 2008 decision wherein the Government successfully enjoined Schulz (and two corporate defendants he founded) from promoting an abusive tax shelter pursuant to § 6700 of the Internal Revenue Code, 26 U.S.C. § 6700. *See United States v. Schulz*, 529 F.Supp.2d 341 (N.D.N.Y. 2007) (McAvoy, J.) *aff'd*, 517 F.3d 606 (2d Cir. 2008) *and enforcement granted*, No. 1:07-CV-0352, 2008 WL 2626567, 2008 U.S. Dist. LEXIS 57948 (N.D.N.Y. Apr. 28, 2008).

Since *Schulz I* determined Schulz's liability under § 6700,[1] and this Court has already concluded that the issue was fully and fairly litigated in that proceeding and that Schulz may not re-litigate *Schulz I* in this action, Schulz's first two arguments for reconsideration are unavailing. (*See* Dkt. No. 88, pp. 7–10). As to Schulz's third argument, the Court twice previously concluded that the Anti–Injunction Act, 26 U.S.C. § 7421, barred Schulz's requests for a preliminary injunction against the Government. (*See* Dkt. No. 23, pp. 3–9; Dkt. No. 88, pp. 5–6). In sum, Schulz seeks only to relitigate issues already decided, and he has not shown the need to correct a clear error of law or prevent manifest injustice.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Reconsideration (Dkt. No. 92) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on the Plaintiff.

**IT IS SO ORDERED.**

---

1. In finding that Schulz violated § 6700, Judge McAvoy concluded, among other things, that "[b]ecause Defendants have actually persuaded others, directly or indirectly, to violate the tax laws, Defendants words and actions were directed toward such persuasion, and the unlawful conduct was imminently likely to occur, the First Amendment does not afford protection." *Schulz I*, 529 F.Supp.2d at 357.